# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| DAVID BLACK, an adult individual, and, ANJA WREDE, an adult individual,<br><br>Plaintiffs,<br><br>v.<br><br>GRANGE INSURANCE ASSOCIATION, an insurance company,<br><br>Defendant. | C08-1699Z<br><br>ORDER |

THIS MATTER comes before the Court on Plaintiffs' Motion for Declaratory Judgment/Partial Summary Judgment Regarding Grange Insurance's Duty to Defend, docket no. 14, and Defendant's Motion for Summary Judgment, docket no. 37. Having considered the briefs and declarations filed in support of and in opposition to the motions, and having heard oral argument on Thursday, November 5, 2009, the Court now enters the following Order.

## I. BACKGROUND

### A. Case Overview

This case involves a dispute over the status of two persons – Plaintiffs David Black and Anja Wrede – as "insureds" under a property and liability policy issued by an insurer, Defendant Grange Insurance Association ("Grange"). The policy lists "Paula Einstein" as

ORDER - 1

the named insured. However, the policy allows for certain other persons to be deemed "insureds" under the policy. Black and Wrede lived on Einstein's farm property at the time of an accident to Katharina Haerer, a guest on the farm. After the accident, Haerer sued Black, Wrede and Einstein. Grange defended Einstein in the underlying lawsuit, but denied Black and Wrede a defense. Black and Wrede now contend that Grange breached its duty to defend them in the underlying lawsuit.

### B. Underlying Lawsuit

On May 5, 2008, Haerer sued Black, Wrede, and Einstein in Grays Harbor County Superior Court, Haerer v. Black, Cause No. 08-2-00568-9. Scuderi Decl., docket no. 19, Ex. G (Haerer Compl.). In describing the parties to the underlying lawsuit, the Haerer Complaint alleges that Haerer "suffered serious and permanent personal injuries . . . while temporarily residing on a horse farm in Grays Harbor County, State of Washington, as a participant in a training program in which she was learning about training horses" (¶ 1.1); that, at the time of the accident, Black and Wrede "were running the horse training program in which [Haerer] was participating and were residing on the subject horse farm" (¶ 1.2); that "Black has . . . claimed that, at the time [Haerer] sustained the injuries, . . . he owned an interest in the real property on which the subject horse farm was situated and the business of the farm" (¶ 1.2); that "Einstein has claimed that, at the time [Haerer] sustained the injuries . . . , Einstein owned an interest in the real property on which the subject horse farm was situated and the business operated on that farm," and that, "[i]n fact, . . . Einstein has claimed that she was the sole owner of the real property and the business" (¶ 1.3).

In describing the factual background of the underlying lawsuit, the Haerer Complaint alleges that Haerer "was accepted into the [horse training] program for the time period from July 10, 2006, to October 10, 2006;" "[t]he training was to be provided by . . . Black and . . . Wrede;" and "[t]he facilities for the training program were a horse farm provided by . . . Black and . . . Einstein" (¶ 2.1); that "[d]uring the time that [Haerer] was on Defendants'

ORDER - 2

horse farm, she received limited training from . . . Black and also fed Defendants' horses, cleaned their stables and horses, rode and helped train some of their horses, and provided care for the toddler child of . . . Black and Wrede" (¶ 2.2); that "[o]ne of Defendants' horses, Aidan" exhibited "dangerous" and "difficult" behavior that Black and Wrede "personally observed" and that Einstein "knew or should have known" about "as [Einstein] previously lived on the horse farm with . . . Black and/or visited the horse farm and/or otherwise personally observed Aidan as one of the horses of the horse business [Einstein] conducted and participated in with . . . Black" (¶ 2.3); that "Black and . . . Wrede ignored [Haerer's] concerns" about Aidan (¶ 2.4); that "[o]n or about September 24, 2006, . . . Black left the farm, reportedly to participate in a one week bicycle fair in Las Vegas, Nevada;" "[t]he next day, . . . Wrede also left the farm;" "[t]his left [Haerer] and another young German trainee who had come to the horse farm . . . all alone on the horse farm to care for all thirty of Defendants' horses and the toddler child;" and Haerer "had no choice but to take care of the . . . horses and the child" (¶ 2.5); that "[o]n or about September 27, 2006, while [Haerer] was attempting to handle Aidan in the process of the young trainee feeding the horses, Aidan kicked [Haerer] in the face, knocking her unconscious and causing . . . injuries" (¶2.6); that "[a]s a result of the incident, [Haerer] sustained severe personal bodily injuries" (¶ 2.7); and that Haerer "has incurred . . . expenses for treatment . . . , lost earning capacity, and other expenses" (¶ 2.8).

In describing Haerer's causes of action, the Haerer Complaint alleges that Black and Wrede were "negligent . . . because they failed to exercise reasonable and ordinary care in their training of [Haerer]" and because Black and Wrede "knew or should have known that [Haerer] was not properly trained to safely handle the horse Aidan" (¶ 3.1); that Black and Wrede were "negligent . . . because they failed to exercise reasonable and ordinary care when they left [Haerer] alone on the horse farm with another young trainee to care for . . . the horse Aidan, along with all the other horses and the toddler child" (¶ 3.2); that Black and Wrede

"knew or should have known that [Haerer] was not able to engage safely in activities with Aidan" (¶ 3.3); that Black and Wrede "acted with willful and wanton disregard for the safety" of Haerer (¶ 3.4); that Black and Einstein "are jointly and severally liable to [Haerer] . . . as equine activity sponsors" (¶ 3.5); that "Einstein is also jointly and severally liable with . . . Black to [Haerer] as . . . Black's principal, partner, and/or joint venturer and/or because she profited from the horse farming business and other activities conducted on the horse farm by . . . Black" (¶ 3.6); and that Defendants' conduct caused Haerer's injuries and damages (¶ 3.7).

### C. Grange's Denial of Defense to Black and Wrede

Within days of the accident, on or about October 1, 2006, Black informed Grange of the Haerer accident. Black Decl., docket no. 15, ¶ 5. Prior to Haerer's filing of her lawsuit against Black, Wrede and Einstein, the Grange determined that Black and Wrede did not qualify as insureds under the policy at issue. Scuderi Decl., Ex. D (unsigned letters to Black and Wrede dated Jan. 15, 2008 and Feb. 15, 2008) at 155, 160-65. Grange set forth the same position in letters dated after the May 5, 2008 filing of the Haerer lawsuit, but prior to Black and Wrede's tender of defense. Id., Ex. D (unsigned letters dated May 20, 2008) at 166-71.

Lynn Perry, Grange's Senior Claims Representative, asserts that Black and Wrede "tendered their defense in the *Haerer v. Black* lawsuit to the Grange Insurance Association by letters dated July 9 and 10, 2008." Perry Decl., docket no. 27, ¶ 4, Ex. A (letters to Grange dated July 9, 2008, and July 10, 2008). In these letters, Plaintiffs' attorney Jon Cushman argued that Black and Wrede "were covered. . . [as] farm hands, living on the property," and that Black was covered as Einstein's partner in the farm business, as Einstein's employee, and as Einstein's real estate manager. Id., Ex. A (July letters) at 1-2. Perry responded on behalf of Grange by letter dated July 21, 2008, in which she explained that Grange was denying "Mr. Black's and Ms. Wrede's tender of defense because neither of them fell within the scope of Section II 'Who is an Insured' in the liability coverage of the

ORDER - 4

FarmPak policy issued to Paula Einstein." Perry Decl. ¶ 4; Scuderi Decl., Ex. D (unsigned letter dated July 21, 2008) at 156-59. Specifically, Grange rejected the arguments that Black was an insured as a partner or employee of Einstein, that Black and Wrede were insureds as Einstein's farm hands, and that Black was an insured as Einstein's real estate manager. Scuderi Decl., Ex. D at 158-59.

With respect to Plaintiffs' assertion that they were "farm hands," the Grange responded:

> Your letters also state that both Mr. Black and Ms. Wrede were farm hands living on the property. In SECTION II - WHO IS AN INSURED of Form 2000 0305 at paragraph 2(a), a farm employee is an insured only for acts within the scope of their employment by the named insured or while performing duties related to farming. Please now refer to SECTION IV [sic] - DEFINITIONS of Form 2000 0305 at paragraph 7 where the term 'farming' is defined as an agricultural or aquacultural enterprise. There is no allegation in the complaint that Ms. Haerer was injured when Mr. Black or Ms. Wrede were engaged in farming activities as defined in Form 2000 0305. To the contrary, Ms. Haerer states that neither Mr. Black nor Ms. Wrede were present on the farm when the incident occurred as they had left the state to participate in a week long bicycle fair in Las Vegas. In addition, the horse training program operated by Mr. Black and Ms. Wrede that Ms. Haerer was participating in during 2006 can not be construed as an agricultural or aquacultural enterprise to qualify as farming in order for the liability coverage to apply.

Id., Ex. D at 158.

Black and Wrede ultimately settled Haerer's claims against them in the underlying lawsuit. Black Decl. ¶ 7. As part of the settlement, Haerer executed a covenant not to execute against Black, and Haerer dismissed with prejudice her claims against Wrede. Id.

**D.    Grange's Provision of a Defense for Einstein**

After Haerer filed the underlying lawsuit, Einstein tendered her defense to Grange. Perry Decl. ¶ 3. Grange accepted her tender without reservation and assigned defense counsel to represent Einstein. Id. Public records indicate that Einstein was dismissed from the underlying lawsuit on September 11, 2009. Einstein is not a party to the present lawsuit.

///

///

ORDER - 5

**E.  Present Lawsuit**

On November 21, 2008, Black and Wrede filed the present lawsuit against Grange, seeking a declaratory judgment that Grange breached its duty to defend, and asserting claims for breach of contract, bad faith, violations of the Washington Consumer Protection Act, RCW 19.86 et seq., violations of the Insurance Fair Conduct Act, RCW 48.30.015, and negligence.  Compl. ¶¶ 11-22.

**F.  The Insurance Policy**

The policy at issue is a Farmpak property and liability policy issued by Grange Insurance Association, Policy No. FP01010131.  Scuderi Decl., Ex. A (the "Policy").[1]  The named insured in the Policy is "Paula Einstein."  Id., Ex. A (Policy) at GRANGE 0858 ("Liability Declarations").  In the "Farming and Personal Liability Insurance" portion of the Policy, Section II is entitled, "Who Is an Insured."  Section II provides the following pertinent definitions of an "insured:"

> 1. Insured means you, and if you are:
>
>    a.  An individual:
>
>        (1) Residents of your household who are your relatives;
>
>    * * *
>
>    b.  A partnership or joint venture, your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your **farming** operations.
>
>    * * *
>
> 2. Each of the following is also an insured:
>
>    a.  Your volunteer workers only while performing duties related to your

---

[1] The first page of this exhibit is a certification that this is a "copy of the Farmpak Insurance policy issued to Paula Einstein by Grange Insurance Association bearing policy number FP01010131 in effect September 27, 2006."  See also Perry Decl. ¶ 2 (Grange's Senior Claims Representative's statement that this policy was in effect on Sept. 27, 2006).  In contrast, the policy attached as Exhibit A to the Complaint appears to be an outdated policy, and, therefore, has not been considered by the Court.

ORDER - 6

|   |   |
|---|---|
| 1 | **farming**,[2] or your **farm employees**[3] . . . , but only for acts within the scope of their employment by you or while performing duties related to your **farming**. |
| 2 | |
| 3 | * * * |
| 4 | b. Any person (other than your **farm employee** or volunteer worker), or any organization while acting as your real estate manager. |
| 5 | |

Id., Ex A (Policy) at GRANGE 0928-0929 (Form 2000 0305) (emphasis in original). Section II further provides that "No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations." Id., Ex. A at GRANGE 0929.

### G. The Application for Insurance

The application for insurance, which was originally submitted in March 1998, gave the option of identifying the applicant as an "individual," a "partnership," a "joint venture," or a "corporation." Einstein Decl., docket no. 28, ¶ 16, Ex. F (Farmpak Application). The "individual" box was marked, and the boxes for "partnership," "joint venture" and "corporation" were unmarked. Id., Ex. F (Farmpak Application) at GRANGE 0386 ("APPLICANT IS INDIVIDUAL ☒  PARTNERSHIP ☐  JOINT VENTURE ☐  CORPORATION ☐"). The application was left blank after the following statement: "LIST ALL MEMBERS OF PARTNERSHIP / JOINT VENTURE / CORPORATION." Id., Ex. F at GRANGE 0386.

---

[2] Section V of the "Farming and Personal Liability Insurance" portion of the Policy defines "farming," in pertinent part, as "the operation of an agricultural . . . enterprise." Scuderi Decl., Ex. A (Policy) at GRANGE 0932.

[3] Section V of the "Farming and Personal Liability Insurance" portion of the Policy defines a "farm employee" as "an insured's employee whose duties are principally in connection with the maintenance or use of the insured location as a farm. These duties include the maintenance or use of an insured's farm equipment. But farm employee does not mean any employee while engaged in an insured's business." Scuderi Decl., Ex. A (Policy) at GRANGE 0932. The Policy does not define "volunteer workers."

ORDER - 7

### H. Present Motions for Summary Judgment

Black and Wrede move for partial summary judgment and declaratory relief on the issue of whether Grange breached its duty to defend. Grange moves for summary judgment dismissal of Plaintiffs' "claims of insurance bad faith, breach of contract, Consumer Protection Act violations, and violations of RCW 48.30.015." Def.'s Mot., docket no. 37, at 1.[4]

## II. DISCUSSION

### A. Summary Judgment Standard

The Court should grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When a properly supported motion for summary judgment has been presented, the adverse party "may not rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e). Rather, the non-moving party must set forth "specific facts" demonstrating the existence of a genuine issue for trial. Id.; Anderson, 477 U.S. at 256.

### B. Cross-Motions for Summary Judgment Re: Breach of Duty to Defend

The parties have filed cross-motions for summary judgment on the issue of whether Grange breached its duty to defend Black and Wrede.[5] Summary judgment is appropriate on the issue of whether Grange breached its duty to defend because "the interpretation of

---

[4] Grange does not address Plaintiffs' claim for negligence. See Compl. ¶¶ 12, 17.

[5] Plaintiffs do not clearly enumerate their claims in their Complaint, nor do they assert that their motion for declaratory judgment/partial summary judgment seeks to resolve any particular claim. This ruling expressly does not reach Plaintiffs' breach of contract claim because Plaintiffs have not proven that they are, in fact, insureds under the Policy. That claim remains in the case.

ORDER - 8

language in an insurance policy is a matter of law." Allstate Ins. Co. v. Peasley, 131 Wn.2d 420, 423-24 (1997); see also Woo v. Fireman's Fund Ins. Co., 161 Wn.2d 43, 52 (2007) ("Interpretation of an insurance contract is a question of law"). A court is to "construe the language of an insurance policy . . . [by] giv[ing] it the same construction that an 'average person purchasing insurance' would give the contract." Woo, 161 Wn.2d at 52 (quoting Roller v. Stonewall Ins. Co., 115 Wn.2d 679, 682 (1990)).

### 1. **Duty to Defend**

The duty to defend "is broader than the duty to indemnify." Woo, 161 Wn.2d at 52. The duty to defend "arises at the time an action is first brought, and is based on the potential for liability." Id. (quoting Truck Ins. Exch. v. VanPort Homes, Inc., 147 Wn.2d 751, 760 (2002)). "An insurer has a duty to defend 'when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage.'" Woo, 161 Wn.2d at 52-53 (quoting Truck Ins., 147 Wn.2d at 760). In determining the duty to defend an alleged "omnibus insured," Washington applies this "prospective test" to base the duty on the allegations of the underlying complaint. See Holland Am. Ins. Co. v. Nat'l Indemnity Co., 75 Wn.2d 909, 911, 914-15 (1969) ("[I]t is well established in this . . . jurisdiction[] that the insurer's duty to defend, unlike its duty to pay, arises when the complaint is filed and is to be determined from the allegations of the complaint."). The "prospective test" stands in contrast to the "ultimate showing or retrospective test." See Williams v. Community Drive-In Theatre, Inc., 3 Kan.App.2d 352, 353-55 (Kan. Ct. App. 1979) (summarizing the two approaches). Accordingly, Grange's reliance on cases, such as Williams, 3 Kan.App.2d 352, Navajo Freight Lines, Inc. v. Liberty Mutual Insurance Company, 471 P.2d 309 (Ariz. Ct. App. 1970), and Ricciardi v. Bernasconi, 105 N.J. Super. 525 (N.J. Super. Ct. Law Div. 1969), which apply the ultimate showing or retrospective test, is misplaced. See Def.'s Reply, docket no. 44, at 10.

In Holland America, the Washington Supreme Court addressed the issue of whether an insurer who has issued a policy of automobile liability insurance is obliged to defend a person who is not the named insured but is allegedly an insured under the omnibus clause, which provides coverage for any person using the automobile with the permission of the named insured. 75 Wn.2d at 909. The Holland America Court held that "the duty to . . . defend a person alleged to have been driving with the permission of its named insured is to be determined from the allegations of the complaint and does not depend on the actual fact of permission, that fact being one which the plaintiff must establish in order to recover, but which the driver is not obliged to prove in order to be entitled to defense." Id. at 914-15. The Court reiterated its previously-taken position that an insurer "could not stand aloof from the action on the basis of its unilateral determination that the driver was not insured, and, . . . escape responsibility for the expenses of defending him." Id. at 911 (citing Western Pac. Ins. Co. v. Farmers Ins. Exch., 69 Wn.2d 11 (1966)).

In Holland America and Western Pacific, the Washington Supreme Court recognized the existence of at least a putative contractual relationship between an insurer and an alleged insured. The Holland America Court stated that in light of the omnibus provision in the insurance policy, "[t]he insurer expressly undertakes to defend such suits [involving a person alleged to have been driving with permission of the driver], and we know of no sound reason why it should not be held to its contract." 75 Wn.2d at 914. The Western Pacific Court stated that an insurer who issued a policy "with potential coverage extend[ing] to nonowner drivers under the omnibus clause had a clearly recognizable contractual concern with the defense of [those nonowner drivers]." 69 Wn.2d at 18.

"An insurer is not relieved of its duty to defend unless the claim alleged in the complaint is 'clearly not covered by the policy.'" Woo, 161 Wn.2d at 53 (quoting Truck Ins., 147 Wn.2d at 760); Scottish & York Int'l Ins. Group v. Ensign Ins. Co., 42 Wn. App. 158, 160 (Wash. Ct. App. 1985). "[I]f a complaint is ambiguous, a court will construe it

liberally in favor of triggering the insurer's duty to defend." Woo, 161 Wn.2d at 53. "There are two exceptions to the rule that the duty to defend must be determined only from the complaint, and both the exceptions favor the insured." Woo, 161 Wn.2d at 53 (quoting Truck Ins., 147 Wn.2d at 761). "First, if it is not clear from the face of the complaint that the policy provides coverage, but coverage could exist, the insurer must investigate and give the insured the benefit of the doubt that the insurer has a duty to defend." Id. "Second, if the allegations in the complaint conflict with facts known to or readily ascertainable by the insurer, or if the allegations are ambiguous or inadequate, facts outside the complaint may be considered." Id. at 54 (quoting Truck Ins., 147 Wn.2d at 761) (internal quotations omitted). "The insurer may not rely on facts extrinsic to the complaint to deny the duty to defend – it may do so only to trigger the duty." Id.[6]

"The duty to defend is a valuable service paid for by the insured and one of the principal benefits of the liability insurance policy." Id. "If the insurer is uncertain of its duty to defend, it may defend under a reservation of rights and seek a declaratory judgment that it has no duty to defend." Id. "Although the insurer must bear the expense of defending the insured, by doing so under a reservation of rights and seeking a declaratory judgment, the insurer avoids breaching its duty to defend and incurring the potentially greater expense of defending itself from a claim of breach." Id.

Keeping these standards in mind, the Court must now determine whether the Haerer Complaint, construed liberally, alleges facts which could, if proven, impose liability upon Black and Wrede within the Policy's coverage.[7]

---

[6] Grange has not brought any authority to the attention of the Court, nor is the Court aware of any authority, that would preclude this jurisprudence from applying to *alleged* insureds under an insurance policy.

[7] Although the parties rely heavily on extrinsic evidence to make their arguments, the Court focuses its inquiry on the allegations in the Haerer Complaint and the language in the Policy.

ORDER - 11

### 2. **Status as "Residents of Your Household Who Are Your Relatives"**

Section II(1)(a)(1) of the liability portion of the Policy defines an "insured" as "you, and if you are [a]n individual: (1) Residents of your household who are your relatives." Scuderi Decl., Ex. A (Policy) at GRANGE 0928. Plaintiffs do not argue that Black is an insured under this provision.[8] Instead, Plaintiffs argue that Wrede is an insured under this provision because she lived with Black at the farm at the time of the accident and was married to him. Black, however, is not the named insured in the policy, and therefore Plaintiffs' analysis is incorrect.

The Policy's reference to "you" is to Paula Einstein, the named insured. Id., Ex. A (Policy) at GRANGE 0918 ("Throughout this Coverage Form the words **you** and **your** refer to the Named Insured shown in the Declarations") (emphasis in original). The Haerer Complaint does not allege that Wrede was a resident of Einstein's household or was Einstein's relative. See generally Scuderi Decl., Ex. G (Haerer Compl.). Accordingly, Section II(1)(a)(1) does not apply, and Grange did not breach its duty to defend Wrede based on Section II(1)(a)(1)'s definition of an "insured."

### 3. **Status as Partner in the "Paula Einstein" Partnership**

Section II(1)(b) of the liability portion of the Policy defines an "insured" as "you, and if you are [a] partnership or joint venture, your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your farming operations." Scuderi Decl., Ex. A (Policy) at GRANGE 0928. Black argues that he should be considered an insured under the Policy as a partner in the "Paula Einstein" partnership, and he relies on the Haerer Complaint's allegation of a partnership between Black and Einstein. See Scuderi Decl., Ex. G (Haerer Compl.) ¶ 3.6.[9]

---

[8] Plaintiffs' briefs did not make this argument, and, at oral argument, Plaintiffs' counsel conceded that Black did not fall within Section II(1)(a)(1), (2), or (3) of the Policy.

[9] Plaintiffs also argue that they are insureds under Section II(1)(b) because "Black and Einstein both co-owned the horse farm that was insured through Grange at the time of the

ORDER - 12

Black's "Paula Einstein" partnership argument fails because, as noted above, the Policy's reference to "you" is to Paula Einstein, the named insured. Scuderi Decl., Ex. A (Policy) at GRANGE 0918. The Policy expressly provides that "No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations." Id., Ex. A (Policy) at GRANGE 0929. The "Liability Declarations" page of the Policy does not identify any partnership or indicate that "Paula Einstein" signifies a partnership. Scuderi Decl., Ex. A (Policy) at GRANGE 0858. The Court may rely on the Declarations Page of the Policy to determine the identity of the named insured. See Smith v. Cont'l Cas. Co., 128 Wn.2d 73, 80 (1995) (relying on the declarations page of the policy for the identification of "covered autos"); Kelly v. Aetna Cas. & Sur. Co., 100 Wn.2d 401, 403 (1983) (relying on the declaration page of the policy for the list of vehicles that were specifically insured).

At oral argument, Plaintiffs' counsel argued that the application for insurance should have been filled out on behalf of a partnership. First, the Court does not consider the application for insurance, which is extrinsic evidence, to find that the named insured under the Policy is Paula Einstein. The Policy is unambiguous in this regard. See Alea London Ltd. v. Bickford, 627 F. Supp. 2d 763, 770 (S.D. Tex. 2009) (holding that "[n]either D.R. Bickford & Sons, Inc. nor Bickford & Sons, L.P. is a named insured . . . where the policy unambiguously lists "David Bickford" as the named insured). Second, even if the Court were to consider the application for insurance, the Court would have to consider the application as it was written, not as it might have been written. The application for insurance

---

occurrence." Pls.' Mot. at 8:13-14. Although the Haerer Complaint alleges co-ownership of the horse farm by Black and Einstein, see Scuderi Decl., Ex. G (Haerer Compl.) ¶¶ 1.2, 1.3, the Policy does not base its definition of an "insured" on ownership of the farm. Cf. Wiese v. Mut. of Enumclaw, 49 Wn. App. 906, 910 (Wash. Ct. App. 1987) (involving a "boat owner's supplement" that extended coverage for "Bodily Injury or Property Damage arising out of the ownership . . . of the watercraft"). Accordingly, the Court rejects this argument.

ORDER - 13

clearly applied for coverage for an individual, not a partnership. Plaintiffs' counsel admitted at oral argument that Plaintiffs' argument under Section II(1)(b) was "weak."

Section II(1)(b) does not apply to allow coverage to Black (or Wrede) by way of Black's alleged partnership with Einstein because the Policy unambiguously lists "Paula Einstein" as the named insured. Grange did not breach its duty to defend Black (or Wrede) based on Section II(1)(b)'s definition of an "insured."

### 4. <u>Status as "Volunteer Worker" or "Farm Employee"</u>

Section II(2)(a) of the liability portion of the Policy provides that "[e]ach of the following is also an insured: Your volunteer workers only while performing duties related to your farming, or your farm employees . . . , but only for acts within the scope of their employment by you or while performing duties related to your farming." Scuderi Decl., Ex. A (Policy) at GRANGE 0928-0929. Although the Haerer Complaint does not expressly allege that Black and Wrede were Einstein's "volunteer workers" or "farm employees," the allegations in the Haerer Complaint, liberally construed, trigger this provision, and thus trigger Grange's duty to defend.

In essence, Haerer alleges that she was injured by a horse on Einstein's horse farm as a result of Black and Wrede's negligence. Specifically, the Haerer Complaint alleges that Einstein and Black owned interests in the real property on which a horse farm was situated (¶¶ 1.2, 1.3); that, at the time of the accident, Black and Wrede resided on the farm and ran a horse training program there (¶¶ 1.2, 2.1); that the facilities for the horse training program were a horse farm provided by Black and Einstein (¶ 2.1); that, as part of the horse training program, Haerer fed, cleaned, rode and helped train horses (¶ 2.2); that Einstein and Black were partners in a horse business operated on the farm (¶¶ 1.2, 1.3, 2.3, 3.6); that Haerer's injuries were caused by a horse that was part of the "horse business" that Einstein conducted and participated in with Black (¶ 2.3); that Haerer's injuries were caused by the horse while Haerer was feeding the horse (¶ 2.6); that Black and Wrede were negligent in leaving Haerer

ORDER - 14

alone on the farm with another young trainee to care for thirty horses and a toddler (¶¶ 2.5, 3.1-3.3); and that Einstein profited from the "horse farming business and other activities conducted on the horse farm" by Black (¶3.6). These allegations, liberally construed, have the potential to bring Black and Wrede within the Policy's coverage of Einstein's volunteer workers or farm employees under Section II(2)(a).

In denying Black and Wrede's defense, Grange asserted that "[t]here is no allegation in the complaint that Ms. Haerer was injured when Mr. Black or Ms. Wrede were engaged in farming activities as defined in Form 2000 0305." Scuderi Decl., Ex. D at 158. Grange also asserted that "the horse training program operated by Mr. Black and Ms. Wrede that Ms. Haerer was participating in during 2006 can not be construed as an agricultural or aquacultural enterprise to qualify as farming in order for the liability coverage to apply." Id., Ex. D at 158. The Court disagrees with Grange's interpretation of the allegations of the Haerer Complaint. Furthermore, the Court also rejects Grange's reliance on extrinsic evidence to deny a defense to Black and Wrede. See Woo, 161 Wn.2d at 54 (extrinsic evidence may only be relied upon to trigger the duty to defend). Grange cannot "stand aloof" from the Haerer action on the basis of its unilateral determination that Black and Wrede were not Einstein's volunteer workers or farm employees alleged to be negligent in performing their farming duties (i.e., maintaining the horses) at the time of the Haerer accident. See Holland America, 75 Wn.2d at 911; Western Pac., 69 Wn.2d at 18.

The Haerer Complaint alleges numerous facts that can be construed to assert that Haerer's injuries arose from the negligence of Black and Wrede in operating Einstein's horse farm. Admittedly, the Haerer Complaint is ambiguous in terms of defining the exact nature of the relationship between, on the one hand, Einstein, and, on the other hand, Black and Wrede. However, "if a complaint is ambiguous, a court will construe it liberally in favor of triggering the insurer's duty to defend." Woo, 161 Wn.2d at 53. Accordingly, this Court construes the Haerer Complaint liberally in favor of triggering Grange's duty to defend and

holds that Grange breached its duty to defend Black and Wrede based on Section II(2)(a)'s definition of an "insured."

### 5. Status as "Real Estate Manager"

Section II(2)(b) of the liability portion of the Policy defines an "insured" as "[a]ny person (other than your farm employee or volunteer worker), or any organization while acting as your real estate manager." Scuderi Decl., Ex. A (Policy) at GRANGE 0929. Black argues that he qualifies as a "real estate manager" under the Policy.

The Policy does not define "real estate manager," and the Court is not aware of any Washington case construing "real estate manager" language in an insurance policy. Other courts have construed "real estate manager" language to mean "simply one who manages real estate for another." See, e.g., Dempsey v. Clark, 847 So.2d 133, 137 (La. Ct. App. 2003) (citations omitted); see also Sumitomo Marine & Fire Ins. Co. of America v. Southern Guar. Ins. Co. of Georgia, 337 F. Supp. 2d 1339 (N.D. Ga. 2004) (adopting plaintiff's expert definition of "real estate manager" as "those who rent, maintain rental premises, keep the books and kindred duties for property owners").

The policy at issue in Dempsey contained the "while acting as real estate manager" language, which is nearly identical to the "while acting as your real estate manager" language in the Policy at issue here. See Dempsey, 847 So.2d at 138. The Dempsey court rejected the alleged insured's "real estate manager" argument not on the grounds that he was not the manager, but because the alleged injury (a dog bite) did not occur while the alleged insured was acting in the capacity of real estate manager for the named insured. See id. at 138-39. Other courts have similarly determined coverage based on whether the underlying injury occurred while the alleged insured's was acting in the capacity of real estate manager. See, e.g., Western Alliance Ins. Co. v. Northern Ins. Co. of New York, 176 F.3d 825, 830 (5th Cir. 1999) (discussing whether the underlying complaint alleged that the alleged insured was acting in his capacity as a building manager for the named insured when he hired an

ORDER - 16

uncertified handyman rather than a professional to install a water heater and when he failed to inspect dysfunctional smoke detectors); Russell v. Clapp, 201 S.W.3d 99, 103 (Mo. Ct. App. 2006) (requiring a showing that the alleged insured was a real estate manager *and* that the injury arose from the alleged insured's activities as a real estate manager); Bewig v. State Farm Fire and Cas. Ins. Co., 848 S.W.2d 521, 522 (Mo. Ct. App. 1993) (denying coverage for a tenant/property manager of the named insured whose dog bit a mail carrier, reasoning that the insurance "obviously does not protect employees or agents [acting] in their individual capacities unrelated to the landlord's interests").

Here, the Haerer Complaint makes no allegations that Black was Einstein's real estate manager or that Haerer's injuries occurred while Black was acting in his capacity as Einstein's real estate manager. In contrast, in Western Alliance, the underlying complaint alleged injuries caused by a real estate manager's negligence regarding the installation of a water heater and inspection of smoke detectors. 176 F.3d at 830. Haerer alleges Black's negligence with respect to the operation of the horse training program and the management of the horses on the horse farm, and not with respect to Black's real estate management, such as rental units on the property, the execution of property-related contracts, or the payment of insurance premiums. Section II(2)(b) does not apply to allow coverage to Black as Einstein's "real estate manager," and Grange did not breach its duty to defend Black based on Section II(2)(b)'s definition of an "insured."

### 6. **Conclusion Re: Duty to Defend**

The Court GRANTS Plaintiffs' motion for declaratory judgment/partial summary judgment and DENIES Defendant's motion for summary judgment on the issue of Grange's duty to defend. Grange breached the duty to defend Black and Wrede based on the allegations in the Haerer Complaint and the Policy's Section II(2)(a)'s definition of an "insured."

### C. Defendant's Motion for Summary Judgment Re: Plaintiffs' Bad Faith Claim

"[A]n insurer has a duty of good faith to its policyholder and violation of that duty may give rise to a tort action for bad faith." Smith v. Safeco Ins. Co., 150 Wn.2d 478, 484 (2003) (en banc). "Claims by insureds against their insurers for bad faith are analyzed applying the same principles as any other tort: duty, breach of that duty, and damages proximately caused by any breach of duty." Id. at 485. "[T]o succeed on a bad faith claim, a policyholder must show the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded." Id. "Whether an insurer acted in bad faith remains a question of fact." Id.

Grange moves for summary judgment dismissal of Plaintiffs' bad faith claim, arguing that Grange did not breach its policy of insurance. Alternatively, Grange argues that its denial of coverage was based on a reasonable interpretation of the insurance policy. Grange also argues that there is no Washington case imposing a duty of good faith upon an insurer with respect to a non-insured. Because the Court finds that Black and Wrede are potential insureds under the Policy, the Court DENIES Grange's motion for summary judgment on Plaintiffs' bad faith claim.

### D. Defendant's Motion for Summary Judgment Re: Plaintiffs' Washington Consumer Protection Act Claim

To sustain a Washington Consumer Protection Act ("CPA") claim, a claimant must show: "(1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation." Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780 (1986). Grange argues that "a reasonable basis for denial of an insured's claim constitutes a complete defense to any claim that the insurer acted in violation of the CPA." Def.'s Mot. at 16:9-12. The Court cannot conclude, as a matter of law, that it was reasonable

ORDER - 18

for Grange to deny Black and Wrede's defense based on the allegations of the Haerer Complaint. Accordingly, the Court DENIES Grange's motion for summary judgment on Plaintiffs' Washington CPA claim.

### E. Defendant's Motion for Summary Judgment Re: Plaintiffs' Insurance Fair Conduct Act Claim

Defendant moves for summary judgment on Plaintiffs' Insurance Fair Conduct Act claim, arguing that Grange "correctly denied coverage to plaintiffs in this case because they were not insured under Einstein's policy of insurance." Def.'s Mot. at 24:9-11. The Court DENIES Grange's motion for summary judgment on Plaintiffs' Insurance Fair Conduct Act claim.

## III. CONCLUSION

The Court GRANTS Plaintiffs' Motion for Declaratory Judgment/Partial Summary Judgment Regarding Grange Insurance's Duty to Defend, docket no. 14, and DENIES Defendant's Motion for Summary Judgment, docket no. 37.

IT IS SO ORDERED.

DATED this 19th day of November, 2009.

Thomas S. Zilly
United States District Judge